UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNETH WOODARD,<br><br>                Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION, a foreign corporation d/b/a/ AMTRAK, CHICAGO UNION STATION COMPANY, a/k/a CUSCo, an Illinois corporation, U.S. EQUITIES ASSET MANAGEMENT, LLC, UNITED BUILDING MAINTENANCE, an Illinois corporation, and JONES LANG LASALLE AMERICAS, INC., a foreign Corporation,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)  Court No.:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AT LAW

PLAINTIFF, KENNETH WOODARD, through his attorneys, SCHIFF GORMAN LLC, for his Complaint against Defendants NATIONAL RAILROAD PASSENGER CORPORATION, a foreign corporation d/b/a AMTRAK, CHICAGO UNION STATION COMPANY, a/k/a/ CUSCo, an Illinois corporation, U.S. EQUITIES ASSET MANAGEMENT, LLC, an Illinois limited liability company, UNITED BUILDING MAINTENANCE, an Illinois corporation, and JONES LANG LASALLE AMERICAS, INC., a foreign corporation states as follows:

1

## **FACTS COMMON TO ALL COUNTS**

### JURISDICTION AND VENUE

1. This is an action for compensatory damages as a result of injuries sustained on an AMTRAK property. All acts complained of took place at Union Station in Chicago, Illinois which is within the Northern District of Illinois, Eastern Division. The Court has jurisdiction of this action under Title 28 U.S.C. Section 1349 and 1332; venue is appropriate pursuant to Title 28 U.S.C. Section 1391. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

### PARTIES

2. PLAINTIFF, KENNETH WOODARD (hereinafter "PLAINTIFF"), is a natural person and a citizen of the United States. He is 60 years old and a resident of Minnesota.

3. Defendant, NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a/ AMTRAK (hereinafter "AMTRAK"), is a foreign corporation which owns, operates, controls and manages, among other things, a passenger railroad system in the contiguous United States.

4. CHICAGO UNION STATION COMPANY (hereinafter CUSCo) is an Illinois corporation authorized to do business in Illinois.

5. U.S. EQUITIES ASSET MANAGEMENT, LLC. (hereinafter U.S. EQUITIES) is an Illinois limited liability company authorize to do business in Illinois.

6. UNITED BUILDING MAINTENANCE, INC. (hereinafter UBM) is an Illinois corporation authorized to do business in Illinois.

7. JONES LANG LASALLE AMERICAS, INC., (hereinafter JLL) is a foreign corporation authorized to do business in Illinois.

## FACTS

8. At all times relevant herein, AMTRAK was a common carrier which owned, operated, managed, maintained, and controlled certain passenger railroad trains, equipment and real property facilitating fare-paying intercity passenger transportation among railway stations in certain American states.

9. At all times relevant herein, CUSCo was a wholly owned subsidiary of AMTRAK.

10. At all times relevant herein, CUSCo was an Illinois corporation which, among other things, owned, operated, managed, inspected, maintained, repaired, and controlled a commercial building in Chicago, Illinois commonly referred to as "Union Station."

11. At all times relevant herein, U.S. EQUITIES was an Illinois limited liability company which, among other things, operated, managed, inspected, maintained, repaired, and controlled a commercial building in Chicago, Illinois commonly referred to as Union Station.

12. At all times relevant herein, UNITED BUILDING MAINTENANCE (hereinafter UBM) was an Illinois corporation which, among other things, operated, managed, inspected, maintained, repaired, and controlled a commercial building in Chicago, Illinois commonly referred to as Union Station.

13. At all times relevant herein, JLL was a foreign corporation which, among other things, operated, managed, inspected, maintained, repaired, and

controlled a commercial building in Chicago, Illinois commonly referred to as Union Station

14. On and prior to January 29, 2014, AMTRAK owned, used and maintained railroad track and equipment to facilitate passenger travel by and between passenger rail stations, including those that facilitate passenger traffic to and from Union Station.

15. On and prior to January 29, 2014, AMTRAK trains originated and terminated at Union Station under a raised canopy that was supported by vertical steel columns.

16. On and prior to January 29, 2014, AMTRAK, CUSCo, U.S. EQUITIES, UBM and JLL (hereinafter DEFENDANTS), and each of them, intended said canopy to cover and protect passengers from the exterior elements, including rain and snow, as they boarded and de-boarded AMTRAK trains.

17. On and prior to January 29, 2014, the means of egress to Union Station from the AMTRAK passenger trains was on raised concrete platforms beneath the aforementioned canopy.

18. Prior to January 29, 2014, PLAINTIFF purchased a reserved ticket from AMTRAK for passenger travel on an AMTRAK train from Cleveland, Ohio to Chicago, Illinois.

19. On January 29, 2014, PLAINTIFF was a fare paying passenger on an AMTRAK train (identified as train #29) that departed Cleveland at or about 3:45 a.m. for a scheduled arrival at Chicago's Union Station at or about 9:45 a.m.

4

20. Shortly after arrival at approximately 9:40 a.m., PLAINTIFF de-boarded the train on track 22 which had stopped under the aforementioned canopy and began walking on the raised concrete platform toward the passenger areas inside Union Station.

21. While walking on said raised concrete platform under the canopy, PLAINTIFF fell on an unnatural accumulation of ice at the base of a steel support column for the canopy, specifically at or near post 18.

22. As a result of said fall, PLAINTIFF was severely injured.

23. Shortly after PLAINTIFF fell, AMTAK police officers investigated the scene of the fall and "discovered a patch of ice" at the base of post 18 on the pedestrian platform of track 22 as described herein. The investigating police officers prepared a written report that described the condition as "unsafe," took photographs of the unsafe condition, and reported the unsafe condition to U.S. EQUITIES.

## COUNT I  (AMTRAK)

1-23. Plaintiff re-states and re-alleges paragraphs 1 through 23 (Facts Common to All Counts) as paragraphs 1 through 23 of Count I as though fully stated herein.

24. At the aforementioned time and place, AMTRAK, by virtue of the fact that it was a common carrier, was held to the highest duty of care in operating the passenger train and facilitating passenger traffic so as not to injure passengers lawfully on its property.

25. Notwithstanding said duties, and in breach thereof, at the aforementioned time and place, AMTRAK, through its agents, servants and employees, was guilty of one or more of the following actions and/or omissions:

a) failed to employ sufficient maintenance measures to adequately salt and/or de-ice the means of egress beneath the canopy on the pedestrian platform, or in the exercise of reasonable care, should have known that ice, water and snow would unnaturally accumulate in the area of said walkway and create an unreasonably dangerous condition for pedestrians using same;

b) failed to adequately illuminate the pedestrian means of egress so that passengers could identify the dangerous conditions presenting on the platform;

c) failed to utilize appropriate building and drainage materials in and on the canopy covering the pedestrian means of egress by allowing channeled, dripping and pooled water, freezing water, and ice onto the means of egress used by pedestrians thereby creating an unreasonably dangerous condition;

d) created and/or allowed the creation and existence of a means of egress from said premises which violated the customs and practice and standards of design of the construction and maintenance industries which require walkways and paved areas to be properly drained and not allow for unnatural accumulation of water, ice and snow;

e) created and/or allowed the creation and existence of an unreasonably dangerous means of egress from a commercial building which violated the building codes and property maintenance codes which were in full force and effect in the City of Chicago;

f) failed to warn its invitees, including Plaintiff, of the aforementioned unreasonably dangerous conditions and guard against passengers approaching same;

g) failed to remedy the defective canopy/roof drainage system by repairing the roof or by directing drainage to an area other than a means of egress, a condition which was aggravated by an insufficient lighting plan, both of which

6

violated existing building and maintenance codes adopted and applicable at the time in issue;

h) allowed, created, and permitted the unnatural accumulation of water and ice on the means of egress on the pedestrian platform of the building due to defective construction or/and improper and insufficient maintenance.

i) failed to inspect, maintain and/or repair the roof and canopy structure allowing for rain and ice to penetrate same and unnaturally collect on the passenger egress platforms thereby creating dangerous conditions for passenger train travel;

j) failed to provide and maintain a passenger platform safe for its intended use;

k) failed to properly warn Plaintiff of the hazards attendant to walking on the pedestrian platform;

l) failed to properly instruct the repair and maintenance personnel, including but not limited to properly instructing, directing and assuring that said personnel identify and remedy dangerous conditions on the platform.

26. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of AMTRAK, KENNETH WOODARD was caused to slip and fall on the pedestrian platform.

27. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of Defendant AMTRAK, KENNETH WOODARD then and there sustained severe and permanent injuries, both internally and externally, which necessitated the expenditure and will in the future necessitate the expenditure of large sums of money for medical care and services related to his injuries, and was and will in the future hinder and prevent him from attending to his duties and affairs, and has lost, and will in the future lose the value of that time.

WHEREFORE, Plaintiff, KENNETH WOODARD, demands judgment against Defendants, NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK, in an amount in excess of the jurisdictional limits of this Court as well as costs concomitant with this lawsuit.

### COUNT II (CUSCo)

1-23. Plaintiff re-states and re-alleges paragraphs 1 through 23 (Facts Common to All Counts) as paragraphs 1 through 23 of Count II as though fully stated herein.

24. At all times relevant herein, CUSCo, by virtue of the fact that it was acting as or in concert with a common carrier in the movement of passengers as described herein, was held to the highest duty of care in operating and maintaining the passenger train equipment so as not to injure passengers lawfully thereon.

25. Notwithstanding said duties, and in breach thereof, CUSCo, through its agents, servants and employees, was guilty of one or more of the following actions and/or omissions:

> a) failed to employ sufficient maintenance measures to adequately salt and/or de-ice the means of egress beneath the canopy on the pedestrian platform, or in the exercise of reasonable care, should have known that ice, water and snow would unnaturally accumulate in the area of said walkway and create an unreasonably dangerous condition for pedestrians using same;
>
> b) failed to adequately illuminate the pedestrian means of egress so that passengers could identify the dangerous conditions presenting on the platform;

8

c) failed to utilize appropriate building and drainage materials in and on the canopy covering the pedestrian means of egress by allowing channeled, dripping and pooled water, freezing water, and ice onto the means of egress used by pedestrians thereby creating an unreasonably dangerous condition;

d) created and/or allowed the creation and existence of a means of egress from said premises which violated the customs and practice and standards of design of the construction and maintenance industries which require walkways and paved areas to be properly drained and not allow for unnatural accumulation of water, ice and snow;

e) created and/or allowed the creation and existence of an unreasonably dangerous means of egress from a commercial building which violated the building codes and property maintenance codes which were in full force and effect in the City of Chicago;

f) failed to warn its invitees, including Plaintiff, of the aforementioned unreasonably dangerous conditions and guard against passengers approaching same;

g) failed to remedy the defective canopy/roof drainage system by repairing the roof or by directing drainage to an area other than a means of egress, a condition which was aggravated by an insufficient lighting plan, both of which violated existing building and maintenance codes adopted and applicable at the time in issue;

h) allowed, created, and permitted the unnatural accumulation of water and ice on the means of egress on the pedestrian platform of the building due to defective construction or/or and improper and insufficient maintenance.

i) failed to inspect, maintain and/or repair the roof and canopy structure allowing for rain and ice to penetrate same and unnaturally collect on the passenger egress platforms thereby creating dangerous conditions for passenger train travel;

j) failed to provide and maintain a passenger platform safe for its intended use;

k) failed to properly warn Plaintiff of the hazards attendant to walking on the pedestrian platform;

      l) failed to properly instruct the repair and maintenance personnel, including but not limited to properly instructing, directing and assuring that said personnel identify and remedy dangerous conditions on the platform.

26. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of CUSCo, KENNETH WOODARD was caused to slip and fall on the pedestrian platform.

27. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of Defendant CUSCo, KENNETH WOODARD then and there sustained severe and permanent injuries, both internally and externally, which necessitated the expenditure and will in the future necessitate the expenditure of large sums of money for medical care and services related to his injuries, and was and will in the future hinder and prevent him from attending to his duties and affairs, and has lost, and will in the future lose the value of that time.

WHEREFORE, Plaintiff, KENNETH WOODARD, demands judgment against Defendant, CHICAGO UNION STATION COMPANY, an Illinois corporation, in an amount in excess of the jurisdictional limits of this Court as well as costs concomitant with this lawsuit.

**COUNT III (U.S. EQUITIES ASSET MANAGEMENT LLC)**

1-23. Plaintiff re-states and re-alleges paragraphs 1 through 23 (Facts Common to All Counts) as paragraphs 1 through 23 of Count III as though fully stated herein.

24. At all times relevant herein, U.S. EQUITIES, by virtue of the fact that it was acting as or in concert with a common carrier in the movement of passengers as described herein, was held to the highest duty of care in operating and maintaining the passenger train equipment so as not to injure passengers lawfully thereon.

25. Notwithstanding said duties, and in breach thereof, U.S. EQUITIES, through its agents, servants and employees, was guilty of one or more of the following actions and/or omissions:

> a) failed to employ sufficient maintenance measures to adequately salt and/or de-ice the means of egress beneath the canopy on the pedestrian platform, or in the exercise of reasonable care, should have known that ice, water and snow would unnaturally accumulate in the area of said walkway and create an unreasonably dangerous condition for pedestrians using same;
>
> b) failed to adequately illuminate the pedestrian means of egress so that passengers could identify the dangerous conditions presenting on the platform;
>
> c) failed to utilize appropriate building and drainage materials in and on the canopy covering the pedestrian means of egress by allowing channeled, dripping and pooled water, freezing water, and ice onto the means of egress used by pedestrians thereby creating an unreasonably dangerous condition;
>
> d) created and/or allowed the creation and existence of a means of egress from said premises which violated the customs and practice and standards of design of the construction and maintenance industries which require walkways and paved areas to be properly drained and not allow for unnatural accumulation of water, ice and snow;
>
> e) created and/or allowed the creation and existence of an unreasonably dangerous means of egress from a commercial building which violated the building codes and

11

property maintenance codes which were in full force and effect in the City of Chicago;

f) failed to warn its invitees, including Plaintiff, of the aforementioned unreasonably dangerous conditions and guard against passengers approaching same;

g) failed to remedy the defective canopy/roof drainage system by repairing the roof or by directing drainage to an area other than a means of egress, a condition which was aggravated by an insufficient lighting plan, both of which violated existing building and maintenance codes adopted and applicable at the time in issue;

h) allowed, created, and permitted the unnatural accumulation of water and ice on the means of egress on the pedestrian platform of the building due to defective construction or/and improper and insufficient maintenance.

i) failed to inspect, maintain and/or repair the roof and canopy structure allowing for rain and ice to penetrate same and unnaturally collect on the passenger egress platforms thereby creating dangerous conditions for passenger train travel;

j) failed to provide and maintain a passenger platform safe for its intended use;

k) failed to properly warn Plaintiff of the hazards attendant to walking on the pedestrian platform;

l) failed to properly instruct the repair and maintenance personnel, including but not limited to properly instructing, directing and assuring that said personnel identify and remedy dangerous conditions on the platform.

26. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of U.S. EQUITIES, KENNETH WOODARD was caused to slip and fall on the pedestrian platform.

27. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of Defendant U.S. EQUITIES,

KENNETH WOODARD then and there sustained severe and permanent injuries, both internally and externally, which necessitated the expenditure and will in the future necessitate the expenditure of large sums of money for medical care and services related to his injuries, and was and will in the future hinder and prevent him from attending to his duties and affairs, and has lost, and will in the future lose the value of that time.

      WHEREFORE, Plaintiff, KENNETH WOODARD, demands judgment against Defendant, U.S. EQUITIES ASSET MANAGEMENT, LLC, an Illinois limited liability company, in an amount in excess of the jurisdictional limits of this Court as well as costs concomitant with this lawsuit.

## COUNT IV (UNITED BUILDING MAINTENANCE)

      1-23.    Plaintiff re-states and re-alleges paragraphs 1 through 23 (Facts Common to All Counts) as paragraphs 1 through 23 of Count IV as though fully stated herein.

      24.    At all times relevant herein, UBM, by virtue the fact that it was acting as or in concert with a common carrier in the movement of passengers as described herein, was held to the highest duty of care in operating and maintaining the passenger train equipment so as not to injure passengers lawfully thereon.

      25.    Notwithstanding said duties, and in breach thereof, UBM, through its agents, servants and employees, was guilty of one or more of the following actions and/or omissions:

a) failed to employ sufficient maintenance measures to adequately salt and/or de-ice the means of egress beneath the canopy on the pedestrian platform, or in the exercise of reasonable care, should have known that ice, water and snow would unnaturally accumulate in the area of said walkway and create an unreasonably dangerous condition for pedestrians using same;

b) failed to adequately illuminate the pedestrian means of egress so that passengers could identify the dangerous conditions presenting on the platform;

c) failed to utilize appropriate building and drainage materials in and on the canopy covering the pedestrian means of egress by allowing channeled, dripping and pooled water, freezing water, and ice onto the means of egress used by pedestrians thereby creating an unreasonably dangerous condition;

d) created and/or allowed the creation and existence of a means of egress from said premises which violated the customs and practice and standards of design of the construction and maintenance industries which require walkways and paved areas to be properly drained and not allow for unnatural accumulation of water, ice and snow;

e) created and/or allowed the creation and existence of an unreasonably dangerous means of egress from a commercial building which violated the building codes and property maintenance codes which were in full force and effect in the City of Chicago;

f) failed to warn its invitees, including Plaintiff, of the aforementioned unreasonably dangerous conditions and guard against passengers approaching same;

g) failed to remedy the defective canopy/roof drainage system by repairing the roof or by directing drainage to an area other than a means of egress, a condition which was aggravated by an insufficient lighting plan, both of which violated existing building and maintenance codes adopted and applicable at the time in issue;

h) allowed, created, and permitted the unnatural accumulation of water and ice on the means of egress on the pedestrian platform of the building due to defective

construction or/and improper and insufficient maintenance.

i) failed to inspect, maintain and/or repair the roof and canopy structure allowing for rain and ice to penetrate same and unnaturally collect on the passenger egress platforms thereby creating dangerous conditions for passenger train travel;

j) failed to provide and maintain a passenger platform safe for its intended use;

k) failed to properly warn Plaintiff of the hazards attendant to walking on the pedestrian platform;

l) failed to properly instruct the repair and maintenance personnel, including but not limited to properly instructing, directing and assuring that said personnel identify and remedy dangerous conditions on the platform.

26. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of UBM, KENNETH WOODARD was caused to slip and fall on the pedestrian platform.

27. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of Defendant UBM, KENNETH WOODARD then and there sustained severe and permanent injuries, both internally and externally, which necessitated the expenditure and will in the future necessitate the expenditure of large sums of money for medical care and services related to his injuries, and was and will in the future hinder and prevent him from attending to his duties and affairs, and has lost, and will in the future lose the value of that time.

WHEREFORE, Plaintiff, KENNETH WOODARD, demands judgment against Defendant, UNITED BUILDING MAINTENANCE, INC. in an amount in excess of the jurisdictional limits of this Court as well as costs concomitant with this lawsuit.

### COUNT V (JONES LANG LASALLE AMERICAS, INC.)

1-23. Plaintiff re-states and re-alleges paragraphs 1 through 23 (Facts Common to All Counts) as paragraphs 1 through 23 of Count V as though fully stated herein.

24. At all times relevant herein, JLL, by virtue the fact that it was acting as or in concert with a common carrier in the movement of passengers as described herein, was held to the highest duty of care in operating and maintaining the passenger train equipment so as not to injure passengers lawfully thereon.

25. Notwithstanding said duties, and in breach thereof, JLL, through its agents, servants and employees, was guilty of one or more of the following actions and/or omissions:

> a) failed to employ sufficient maintenance measures to adequately salt and/or de-ice the means of egress beneath the canopy on the pedestrian platform, or in the exercise of reasonable care, should have known that ice, water and snow would unnaturally accumulate in the area of said walkway and create an unreasonably dangerous condition for pedestrians using same;
>
> b) failed to adequately illuminate the pedestrian means of egress so that passengers could identify the dangerous conditions presenting on the platform;

16

c) failed to utilize appropriate building and drainage materials in and on the canopy covering the pedestrian means of egress by allowing channeled, dripping and pooled water, freezing water, and ice onto the means of egress used by pedestrians thereby creating an unreasonably dangerous condition;

d) created and/or allowed the creation and existence of a means of egress from said premises which violated the customs and practice and standards of design of the construction and maintenance industries which require walkways and paved areas to be properly drained and not allow for unnatural accumulation of water, ice and snow;

e) created and/or allowed the creation and existence of an unreasonably dangerous means of egress from a commercial building which violated the building codes and property maintenance codes which were in full force and effect in the City of Chicago;

f) failed to warn its invitees, including Plaintiff, of the aforementioned unreasonably dangerous conditions and guard against passengers approaching same;

g) failed to remedy the defective canopy/roof drainage system by repairing the roof or by directing drainage to an area other than a means of egress, a condition which was aggravated by an insufficient lighting plan, both of which violated existing building and maintenance codes adopted and applicable at the time in issue;

h) allowed, created, and permitted the unnatural accumulation of water and ice on the means of egress on the pedestrian platform of the building due to defective construction or/and improper and insufficient maintenance.

i) failed to inspect, maintain and/or repair the roof and canopy structure allowing for rain and ice to penetrate same and unnaturally collect on the passenger egress platforms thereby creating dangerous conditions for passenger train travel;

j) failed to provide and maintain a passenger platform safe for its intended use;

k) failed to properly warn Plaintiff of the hazards attendant to walking on the pedestrian platform;

        l) failed to properly instruct the repair and maintenance personnel, including but not limited to properly instructing, directing and assuring that said personnel identify and remedy dangerous conditions on the platform.

26.    As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of JLL, KENNETH WOODARD was caused to slip and fall on the pedestrian platform.

27.    As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of Defendant JLL, KENNETH WOODARD then and there sustained severe and permanent injuries, both internally and externally, which necessitated the expenditure and will in the future necessitate the expenditure of large sums of money for medical care and services related to his injuries, and was and will in the future hinder and prevent him from attending to his duties and affairs, and has lost, and will in the future lose the value of that time.

      WHEREFORE, Plaintiff, KENNETH WOODARD, demands judgment against Defendant, JONES LANG LASALLE, INC., a foreign corporation, in an amount in excess of the jurisdictional limits of this Court as well as costs concomitant with this lawsuit.

**Plaintiff Demands Trial By Jury**

                Respectfully submitted,

                **SCHIFF GORMAN LLC**

                By: s/<u>Thomas G. Gorman</u>

Thomas G. Gorman
**SCHIFF GORMAN LLC**
One E. Wacker, 11th Floor
Chicago, Illinois 60601
312-345-7210
tgorman@schiff-law.com
Counsel for Plaintiff

Ryan T. McNulty
**SCHIFF GORMAN LLC**
One E. Wacker, 11th Floor
Chicago, Illinois 60601
312-345-7221
rmcnulty@schiff-law.com
Counsel for Plaintiff